IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 24-3403

---

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLANT*,

v.

BO BRYANT HOSTETTLER,
*DEFENDANT-APPELLEE*.

---

On Appeal from the United States District Court
For the Northern District of Ohio

---

**BRIEF OF APPELLEE
BO BRYANT HOSTETTLER**

---

STEPHEN C. NEWMAN
Federal Public Defender
Northern District of Ohio
Ohio Bar: 0051928

CATHERINE ADINARO SHUSKY
Attorney at Law
Ohio Bar: 0088731
1660 West Second Street, Suite #750
Cleveland, Ohio 44113
(216) 522-4856 FAX: (216) 522-4321
Email: stephen_newman@fd.org
Email: cathi_shusky@fd.org

# TABLE OF CONTENTS

Table of Authorities..................................................................................... ii

Statement Regarding Oral Argument.......................................................vi

Jurisdictional Statement ...........................................................................1

Issue Presented...........................................................................................2

Statement of the Case................................................................................3

    I.       Introduction .................................................................................3

    II.     Procedural history......................................................................3

Summary of Argument..............................................................................5

Standard of Review....................................................................................7

Argument.....................................................................................................8

    I.     Mr. Hostettler concedes that, based on binding subsequent precedent, the district court erred in placing the burden on the government and by relying only on the defendant's felony convictions................................................................................10

    II.    The *Williams* framework for as applied challenges created a fact-specific dangerousness analysis intended to hinge on the unique circumstances of the individual defendant. Consistent with *Williams* this Court should remand to the District Court to more fully develop the record ................................................................................11

    III.   Summary.....................................................................................27

Certificates of Service and Conformity ................................................30

Designation of Relevant District Court Documents .............................31

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ........................................................26

*District of Columbia v. Heller*, 554 U.S. 570 (2008)......................................8, 19

*Folajtar v. Atty' Gen.*, 980 F.3d 897 (3d Cir. 2020) ...........................................21

*Grannis v. Ordean*, 234 U.S. 385 (1914) ...........................................................26

*Louisville v. Nashville R.R. Co. v. Schmidt*, 177 U.S. 230 (1900) ...........................16

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).....................................................22

*Mathis v. United States*, 579 U.S. 500 (2016)......................................................12

*Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306 (1950) ....................26

*Range v. AG United States*, 69 F.4th 96 (3d Cir. 2023) .........................................22

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) .......4, 8

*United States v. Banks*, 793 F. Supp. 3d 896
      (N.D. Ohio Aug. 6, 2025) .................................................13, 14, 16, 27

*United States v. Goins*, 118 F.4th 794 (6th Cir. 2024) .....................................*passim*

*United States v. Green*, Case No. 23-CR-20506, 2024 WL 4469090
      (E.D. Mich. Oct. 10, 2024) .................................................14, 20, 27

*United States v. Hill*, 700 F. App'x 235 (4th Cir. 2017)..................................13, 14

*United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005)...........................................7

*United States v. Jennings*, 754 F. Supp. 3d 763
      (E.D. Mich. Oct. 24, 2024) ...............................................................*passim*

*United States v. Loines*, 56 F.4th 1099 (6th Cir. 2023) .............................................7

*United States v. Loney*, 331 F.3d 515 (6th Cir. 2003) ................................................7

*United States v. Lott*, 954 F.3d 919 (6th Cir. 2020) ...................................................7

*United States v. Morton*, 123 F.4th 492 (6th Cir. 2024)............................................11

*United States v. Perez*, No. CR 21-433-RJC-1, 2025 WL 3209228
    (W.D. Pa. Nov. 14, 2025)..............................................................................19

*United States v. Rahimi*, 602 U.S. 680 (2024) .........................................................14

*United States v. Salerno*, 481 U.S. 739 (1987) .........................................................17

*United States v. Stone*, 606 F.3d 939 (6th Cir. 2010) ...............................................17

*United States v. Whitley*, 34 F.4th 522 (6th Cir. 2022)...............................................7

*United States v. Williams*, 113 F.4th 637 (6th Cir. 2025)................................*passim*

*United States v. Young*, Case No. 6:24-CR-025, 2025 WL 627207
    (E.D. Ky. Feb 26, 2025)......................................................................14, 26, 27

## Statutes

18 U.S.C. § 922(g) ..............................................................................*passim*

18 U.S.C. § 924(c) .......................................................................................21

18 U.S.C. § 3154.........................................................................................16

18 U.S.C. § 3231..........................................................................................1

28 U.S.C. § 1291...........................................................................................1

## Rules

FED. R. APP. P. 34(2)(C)..............................................................................vi

F<small>ED</small>. R. E<small>VID</small>. 609 ........................................................................................................20


**United States Constitution**

U.S. Const. amend. II...............................................................................................*passim*

U.S. Const. amend. V...............................................................................................*passim*


**Additional Authority**

*Guide to Judicial Policy*, Vol. 8, Pt. A, Ch. 1, § 130(b), available:
https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-8-probation-and-pretrial-services/part-a-pretrial-services-investigation-and-report/ch-1-overview........................................................................................................16

Marshall, C. Kevin, *Why Can't Martha Stewart Have a Gun?,*
32 Harv. J.L. & Pub. Pol'y 695, available: https://journals.law.harvard.edu/jlpp/wp-content/uploads/sites/90/2009/03/marshall_final.pdf...........................................12

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Bo Bryant Hostettler does not believe oral argument is necessary or will be helpful in resolving the issues presented in this appeal. The government raises three issues. First, the government argues that the district court incorrectly placed the burden of proof on them. Second, the government argues that the district court erred by limiting its analysis on dangerousness to only Mr. Hostettler's felony convictions. Based on this Court's subsequent decision in *Williams*, Mr. Hostettler concedes error.

The only assignment of error remaining is whether Mr. Hostettler's status as being under federal supervision makes him dangerous and therefore subject to dispossession of his Second Amendment Right to keep and bear arms as a prohibited person under 18 U.S.C. 922(g)(1). For the reasons stated below Mr. Hostettler respectfully submits that he has not yet had the opportunity to develop the record consistent with his Fifth Amendment Due Process rights. Because the record is undeveloped and needs to be remanded, this Court's decisional process would not be significantly aided by oral argument. *See Fed. R. App. Proc.* 34(2)(c).

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Ohio had original jurisdiction over this case under 18 U.S.C. § 3231, which gives district courts original and exclusive jurisdiction over federal crimes (R. 1: *Indictment*, PageID 1). On April 10, 2024, the district court granted Mr. Hostettler's motion to dismiss the sole count of his indictment, charging a violation of 18 U.S.C. § 922(g)(1). (R. 15: *Opinion and Order*, PageID 96 – 110). The government filed timely notice of appeal on May 9, 2024 (R. 22: *Notice of Appeal*, PageID 138). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

# **ISSUE PRESENTED**

This Court in a published opinion held that § 922(g)(1) is constitutional as applied to defendants if the district court finds, after being afforded an opportunity to be heard, the defendant is dangerous.  Mr. Hostettler was not given the opportunity to be heard on the issue of dangerousness because, at the time of his motion to dismiss the indictment under § 922(g)(1), the burden of proving dangerousness was on the government.  Whether, in the absence of an opportunity to be heard, Mr. Hostettler has been denied his Fifth Amendment right to Due Process, and if the matter should be returned to the district court for the *Williams*-established dangerousness analysis.

## STATEMENT OF THE CASE

## I.  Introduction

One way to interpret the criminal history only report heavily referred to in the government's opening brief is that Mr. Bo Bryant Hostettler has struggled with sobriety throughout his life.  (R. 6, *Pretrial Services Criminal History Only Report*, PageID 18 – 28).  But unfortunately, the record here is limited to Mr. Hostettler's criminal history only report, the indictment, and the opinion and order from the district court.  *Id*.; (R. 1, *Indictment*, PageID 1 – 2);(R. 15, *Opinion and Order*, PageID 96 – 110).  As such Mr. Hostettler has been denied the opportunity to meaningfully be heard on the totality of the facts related to his criminal history.  Furthermore, he has not been given a meaningful opportunity to be heard relative to his specific characteristics.  This Court does not have an adequate record to determine whether he should be dispossessed of his Second Amendment Right to keep and bear arms in self-defense as a dangerous person under 18 U.S.C. §922(g)(1).

## II.  Procedural History

On December 20, 2023, the government filed a single count indictment against Mr. Hostettler for a violation of 18 U.S.C. § 922(g)(1).  (R. 1, *Indictment*, PageID 1).  On February 22, 2024, Mr. Hostettler filed a Motion to Dismiss the indictment as a violation of the Second Amendment, both facially and as applied

under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). (R. 12, *Motion To Dismiss Indictment*, PageID 42). The district court then stayed further briefing pending its rulings on other, similar, *Bruen* motions pending before the district court. (*Non-Doc Order*, Feb. 22, 2024).

The government filed its response to Mr. Hostettler's motion to dismiss on March 15, 2024. (R. 13, *Response In Opposition*, PageID 54). On March 18, 2024, the district court, noting that further briefing in Mr. Hostettler's case had been stayed, notified the parties that a ruling had issued on a similar motion to dismiss a violation of 18 U.S.C. § 922(g)(1). But before lifting the stay in Mr. Hostettler's briefing schedule, the Court requested that counsel confer and file a joint status report. (*Non-Doc Order*, March 18, 2024). That joint status report was filed by the parties on March 27, 2024, and noted that the parties did not require any further briefing. (R. 14, *Status Report*, PageID 94).

On April 10, 2024, the district court issued its order granting Mr. Hostettler's motion to dismiss. (R. 15, *Opinion and Order*, PageID 96). On April 15, 2024, the government filed a motion to stay the district court's order of release pending appeal. (R. 19, *Motion to Stay Ruling*, *Sealed). Mr. Hostettler filed his response on April 16, 2024. (R. 21, *Response in Opposition*, PageID 135). The district court held a hearing on April 19, 2024, and denied the government's motion to stay. (*Minutes of Proceeding,* April 19, 2024). This timely appeal followed.

**<u>SUMMARY OF ARGUMENT</u>**

The district court placed the burden of showing dangerousness on the government. Mr. Hostettler concedes this point. But this occurred before this Court's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir., 2025). Because the Court below placed the burden of proof for Mr. Hostettler's as applied challenge on the wrong party, Mr. Hostettler was denied any opportunity to prove he doesn't fit within this class-wide generalization.

Mr. Hostettler further concedes that the district court erred by relying only on Mr. Hostettler's history of felony convictions rather than the entirety of his criminal history, to include misdemeanors. But rather than being a reason for this Court to conclude Mr. Hostettler is dangerous, it is more reason for this Court to remand to the district court, the court best suited to do basic factfinding of the nature related to Mr. Hostettler's criminal history.

The government relies on only two documents to show dangerousness. First, they rely on Mr. Hostettler's underlying indictment. (R. 1, *Indictment*, PageID 1 – 2). Second, they rely on a criminal history only report. (R. 6, *Pretrial Services Criminal History Only Report*, PageID 18 – 28). Even taken together, in the absence of Mr. Hostettler having a meaningful opportunity to be heard on the issue of dangerousness, to present the district court with the totality of the facts surrounding these documents, and for the district court to engage in basic factfinding related to

5

Mr. Hostettler's specific characteristics, these documents are insufficient to demonstrate dangerousness.

By not being provided the opportunity to be heard on an important matter in a meaningful way, Mr. Hostettler has been denied his Fifth Amendment right to Due Process. This court should remand to the District Court for further proceedings.

<u>**STANDARD OF REVIEW**</u>

The government correctly notes that this Court reviews a district court's decision on a motion challenging the constitutionality of a federal statute *de novo*. *Opening Brief for the United States*, Doc. 24 at 17 (citing *United States v. Loney*, 331 F.3d 515, 523 (6th Cir. 2003) and *United States v. Goins*, 118 F. 4th 794, 798 (6th Cir. 2024)). However, this case is more like a district court's review on a motion to suppress, where a district court's factual findings are reviewed for clear error, and the district court's conclusions of law are reviewed *de novo*. *See, e.g., United States v. Loines*, 56 F.4th 1099, 1105 (6th Cir. 2023)("The Court reviews a district court's decision on a suppression motion for clear error as to factual findings and *de novo* as to conclusions of law')(citing *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005)); *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022)("When reviewing a district court's decision concerning a motion to suppress, we review findings of fact under the clear error standard and review conclusions of law de novo")(citing *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020)).

This Court should review the district court's factual findings for clear error, and the district court's decision on the constitutionality of the statue, both facially and as applied to Mr. Hostettler, *de novo*.

# ARGUMENT

The Second Amendment states "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."  U.S. CONST. AMEND. II.  But in a series of landmark decisions, the Supreme Court of the United States changed the commonly understood application of this language.  The first of these decisions interpreted the Amendment to find an "inherent" right of every law-abiding citizen to bear arms in self-defense.  *District of Columbia v. Heller*, 554 U.S. 570 (2008).

This was followed by another momentous decision articulating a two-step process for courts to apply in considering challenges to the constitutionality of laws and regulations implicating the Second Amendment. *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).  First, a court must determine if the government can rebut the presumption that the Second Amendment protects the challenged conduct.  *Id*. at 24.  Second, the court must evaluate whether the government can justify the challenged regulation by showing it is "consistent with the Nation's historical tradition of firearms regulation."  *Id.*

It was under this framework that this Court, while finding that felons were among "we the people" and therefore under the protections provided by the Second Amendment, also found that the ban on felons possessing firearms found at 18 U.S.C. § 922(g)(1) was facially consistent with historical regulations.  *United States*

*v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). However, *Williams* preserves a defendant's ability to bring as applied challenges to the constitutionality of the statute. In fact, *Williams* mandates that "individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Williams* 113 F.4th at 661. As such, *Williams* dictates that a defendant must be given an opportunity to rebut the presumption that he is dangerous and therefore disarming him is inconsistent with the tradition of firearms regulation. *Id*.

As noted, this Court reviews a district court's findings of fact on a motion to suppress for clear error. A motion to dismiss should be no different. What is different here is that, in its consideration of Mr. Hostettler's motion to dismiss, the district court placed the burden of proof on the government. (R. 15, *Opinion and Order*, PageID 96 at 103). *Williams* changed that. Consequently, Mr. Hostettler has never had the opportunity to meet what is now his burden of proof. So, while the district court's findings of fact on Mr. Hostettler's motion to dismiss should be reviewed for clear error, Mr. Hostettler submits he has been denied a "reasonable opportunity to prove that [he does not] fit the class-wide generalization" of persons constitutionally dispossessed of his Second Amendment Right to keep and bear arms in self-defense. *Williams*, 113 F.4th at 662 ("…individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization."). Mr. Hostettler has been denied this opportunity in contravention of both *Williams* and

his Fifth Amendment Due Process rights.  This Court should remand to the district court to permit Mr. Hostettler the opportunity to meet his burden of proof, and to protect his Fifth Amendment Due Process rights.

## I. Mr. Hostettler concedes that, based on binding subsequent precedent, the district court erred in placing the burden on the government and by relying only on the defendant's felony convictions.

In their brief, the government acknowledges that the district court's decision predates *Williams*, and that the law at the time was different, placing the burden to demonstrate dangerousness on the government.  *Opening Brief of the United States*, Doc. 24 at 24.  This is contrary to *Williams* and is error.  *Williams*, 113 F.4th at 662.  The same holds true for a district court which fails to consider the entirety of a defendant's criminal history.  This too would be error post *Williams*.  *Id*. at 663.

But because the district court placed the burden on the wrong party Mr. Hostettler never had the opportunity to present any relevant information about the circumstances of his prior convictions, or any other evidence that he is not actually dangerous.  Not only was he denied a "reasonable opportunity" to show he does not fit within the "class wide generalization," he was denied *any* opportunity to do so.  This is inconsistent with *Williams* and requires a remand for the district court to conduct a fact-specific dangerousness analysis.

**II. The *Williams* framework for as applied challenges created a fact-specific dangerousness analysis intended to hinge on the unique circumstances of the individual defendant. Consistent with *Williams* this Court should remand to the District Court to more fully develop the record.**

*Williams* held that 18 U.S.C. § 922(g)(1) remains subject to as applied challenges. *Williams*, 113 F.3d at 657; *see also United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024)("But, at a minimum, the court recognized that a felon must be given the chance to challenge their § 922(g)(1) indictment as applied to them once charged."). To assist courts in deciding as applied challenges this Court established a framework of analysis for courts to apply which focuses on the specific characteristics of each individual defendant. In part, this analysis includes a defendant's criminal history. *Williams* described three categories into which courts may place a defendant's criminal history as they conduct their dangerousness analysis, clarifying the probity of dangerousness of each category of offense from the greatest to the least. *Williams*, 113 F.4th at 657 – 659.

The first category includes offenses against the person, such as murder, rape assault and robbery. *Id.* at 658. These are offenses the *Williams* court concluded are most probative of dangerousness. *Id*. The second category includes offenses not strictly against the person but nonetheless posing a significant threat of danger, such as drug trafficking which, while probative of dangerousness, are seemingly less so than those in category one. *Id*. at 659. The third and least probative category

11

includes offenses which cause no physical harm to another person or the community, such as mail fraud or making false statements. *Id*.

But *Williams* also directed courts not to overread this section by clarifying that they were only "…mak[ing] the commonsense point that certain categories of offenses—like historical crimes against the person—will more strongly suggest that an individual is dangerous." *Williams,* 113 F.4th at 660. This seems intuitive. A defendant's criminal history may inform his dangerousness. But what a defendant's criminal history alone cannot do is categorically determine it. Instead, *Williams* dictates that defendants should be provided with the opportunity to rebut any presumption of dangerousness. Mr. Hostettler has been denied this opportunity.

Put another way, the *Williams* court clearly abjured any categorical inquiries. *Id.* (citing *Mathis v. United States*, 579 U.S. 500 (2016) rejecting any "categorical approach" to a district court's basic factfinding on a defendant's criminal history). Instead, rather than directing courts to "draw bright categorical lines," *Williams* makes clear that "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Williams,* 113 F.4th at 660 (citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L. & Pub. Pol'y 695 at 729).

**1. The government engages in the very type of "bright line categorical" disarmament the *Williams* Court rejected and seeks to deny Mr. Hostettler his constitutional right to show that he is not dangerous.**

*Williams* requires a detailed examination of a defendant's criminal history to determine dangerousness. It also dictates that a defendant should be given an opportunity to make an individualized showing that he himself is not actually dangerous. *See Williams*, 113 F.4th at 663. In conflict with *Williams*, the government asks this Court to apply a categorial disarmament based exclusively on Mr. Hostettler's prior convictions. This would, in contravention of *Williams*, deny Mr. Hostettler any opportunity to demonstrate that he is not actually dangerous. This is inconsistent with this Court's precedent and offends the constitution.

*Williams* expressly left several evidentiary questions "for another day." *Williams*, 113 F.4th at 658 n. 12 (citing *United States v. Rahimi*, 602 U.S. 680, 686-687 (2024)). But *Williams* leaves some clues. First and foremost, "*Williams* used the language of ordinary factfinding to describe its inquiry." *United States v. Banks*, 793 F. Supp. 3d 896, 901 (N.D. Ohio Aug. 6, 2025). *Williams* supports the straightforward principle that district courts should apply basic factfinding principles when engaged in the consideration of a defendant's as applied challenge to § 922(g)(1). *Id*.

As-applied challenges like that raised by Mr. Hostettler typically involve questions of both law and fact. *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir.

2017). In performing their fact-finding role, courts in this Circuit have held evidentiary hearings on the issue of dangerousness, both receiving evidence and taking testimony on the issue. *See, e.g., United States v. Young*, Case No. 6:24-CR-025, 2025 WL 627207 at \*10-11 (E.D. Ky. Feb. 26, 2025); *United States v. Green*, Case No. 23-CR-20506, 2024 WL 4469090 at \*7-8 (E.D. Mich. Oct. 10, 2024); *United States v. Jennings*, 754 F.Supp. 3d 763, 770 (E.D. Mich. 2024); *Banks*, 793 F. Supp. 3d at 901. Certainly, the *Williams* court "recognize[d] that courts may wish to consider information beyond the criminal convictions when assessing a defendant's dangerousness." *Williams*, 113 F.4th at 658 n. 12 (citing *United States v. Rahimi*, 602 U.S. 680, 686-687 (2024)). District courts taking evidence on the issue is the only way to do so. District courts are the factfinders on the issue of dangerousness.

District courts doing basic factfinding of this nature makes sense. While courts can clearly accept judicially noticeable information beyond a defendant's criminal record, allowing defendants the opportunity to be heard preserves a defendant's right to object to materials which are incorrectly or insufficiently characterized, allows the defendant to present his or her own evidence to explain the totality of the circumstances, as well as submit evidence and testimony related to the defendant's specific characteristics. More importantly, allowing district courts to engage in their factfinding role as they are best suited to do preserves a defendant's

Fifth Amendment right to Due Process. This stands in opposition to what the government asks this Court to do.

The two documents the government relies on in assessing Mr. Hostettler's dangerousness are the indictment, found at R.1, and the criminal history only pretrial services report, found at R.6. But relying on these two documents alone ignores the totality of the facts related to Mr. Hostettler's criminal history. Mr. Hostettler will address these two documents in reverse order.

Relying on the Criminal History Only report so heavily, as the government does here, is an attempt to entice this Court into the very type of categorical exclusions that *Williams* warned against. Giving a defendant the opportunity to be heard seemed important to the *Williams* Court. When considering the as applied challenge in *Williams*, the Court observed that among the judicially noticeable evidence available for consideration is the defendant's Presentence Report (hereafter "PSR"). *Williams*, 113 F.4th at 662. The Court clarified the reason the PSR in Williams's case was so probative of Williams's prior convictions was that "Williams never objected to the Presentence Report's contents." *Id.* Objections of this nature are typically resolved at a hearing held before or contemporaneous with sentencing by a district court judge. During this hearing the defendant is represented by counsel, can be heard, present evidence, and submit testimony on the objections. In short,

district courts perform their factfinding role in resolving the defendant's objections to a PSR.

District courts in this Circuit have relied on this language in applying *Williams* as they engage in their factfinding role. *Banks*, 793 F. Supp. 3d at 902 (declining to consider the defendant's unresolved PSR objections when making a dangerousness determination); *Jennings,* 754 F. Supp. 3d at 770 (noting consideration of "Jennings' unobjected-to PSR."). Unresolved objections, by their nature, lack probity to show dangerousness until they are resolved. By engaging in factfinding, district courts are also following this Court's admonition to keep their analysis within the "constitutionally permissible scope" and are properly "focus[ing] on each individual's specific characteristics." *Williams*, 113 F. 4th at 657.

But here the government does not look to Mr. Hostettler's PSR. In fact, in this case there is no PSR. It is important to note that the report which figures so prominently in their brief is not a PSR, but instead is a criminal history only report with unique and distinctive purposes different from that of a PSR. The purposes of such reports are limited. *See* 18 U.S.C. § 3154; *see also* Guide to Judicial Policy, Volume 8, Part A, Chapter 1, § 130 (b). A criminal history only report is not the same thing as a PSR.

A criminal history only report is drafted for the purpose of facilitating a magistrate or district court judges' decision on bond. The defendant may or may not

be interviewed.  Here, the report indicates that the defendant was not interviewed. (R. 6, *Pretrial Services Report*, PageID 18).  If there is an interview, it may or may not be done with the assistance of counsel.  A defendant's opportunity to object to the report or to provide the Court with clarifying or mitigating details about the report are extremely limited.  While it is used to evaluate dangerousness, it is used pursuant to a judicial officer's duties under the Bail Reform Act,18 U.S.C. § 3142, to determine if a defendant may be detained pending trial.  *See United States v. Salerno*, 481 U.S. 739 (1987).  Importantly, the presumption under the Bail Reform Act is against pretrial detention.  *United States v. Stone*, 606 F.3d 939, 945 (6th Cir., 2010).  This is distinct from the presumption in favor of restricting firearm possession from dangerous felons, making the "liberty interests at stake of vastly different dimensions."  *Jennings*, 754 F. Supp. 3d at 771.

The government's overreliance on such a limited nature report with a distinct purpose and use and a different liberty interest at stake, not to mention Mr. Hostettler's inability to register any objection or provide any clarification to the offenses it lists, is an attempt by the government to engage in the very kind of categorical dispossession under § 922(g)(1) this Court rejected in *Williams*.  Mr. Hostettler's inability to object or provide any clarifying information denied him any reasonable opportunity to prove he does not fit within the generalized category § 922(g)(1) is intended to address.  *Cf. Williams*, 113 F.4th at 661.

As Mr. Hostettler never had the opportunity to object to any of the information included in that report, and since the district court has not yet played its basic factfinding role, this Court does not have a comprehensive record of Mr. Hostettler's specific characteristics, not to mention the totality of the circumstances surrounding the offenses that document purports to list. Permitting the government to rely on such a thin reed treats Mr. Hostettler differently from other defendants in this Circuit who, post-*Williams*, have been given the opportunity to have a district court judge engage in basic factfinding related to their criminal history. Absent an opportunity for Mr. Hostettler to elucidate on the totality of the circumstances surrounding the offenses the government argues makes him dangerous, it fails to account for Mr. Hostettler's specific characteristics, contravenes *Williams*, and denies him due process.

Likewise, reliance on the indictment is another attempt by the government to entice this Court to engage in the very kind of categorical exclusion *Williams* disallowed. This is because the indictment itself is predicated on Mr. Hostettler's prior conviction for a violation of 18 U.S.C. § 922(g)(1). (R. 1, *Indictment*, PageID 1). As the Court below pointed out, this makes the indictment derivative of a prior federal conviction for the very same offense. (R. 15, *Opinion and Order*, PageID 104).

*Heller* makes clear that "the people" "unambiguously refers to all members of the political community, not an unspecified subset," and that the rights conferred by the Second Amendment upon the citizenry belong to "all Americans." *District of Columbia v. Heller,* 554 U.S. 570 at 580 (2008). As the *Williams* Court noted, "nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons." *Williams,* 113 F.4th at 649. To paraphrase *Williams*, then, Mr. Hostettler, as an American citizen, is a member of this political community. *See id*. Merely being a felon and being later charged with a felony because one is a felon is not informative of dangerousness.

The government's reliance on the indictment as indicia of dangerousness is therefore misplaced. There needs to be more than the tautological argument that Mr. Hostettler is a felon because he was a felon when he committed a felony. "Allowing the Government to rely on the allegations in this indictment to establish that the Defendant is dangerous and can therefore be charged with the offense in the indictment is simply question begging." *United States v. Perez*, No. CR 21-433-RJC-1, 2025 WL 3209228, at *8 (W.D. Pa. Nov. 14, 2025). Similarly, reliance on the redundant assertion of an indictment which, as the court below noted, is itself derivative of a decades old offense for which there is no evidence of dangerous behavior, as indicia of dangerousness is inconsistent with the analysis established by

19

*Williams* and invites this court to engage in the very sort of bright line, categorical, exclusionary decision-making *Williams* warned against.

Instead, what this Court requires before it can categorize Mr. Hostettler as "dangerous" is to ensure Mr. Hostettler has the opportunity to rebut the presumption *Williams* makes about certain categories of offenses being dangerous, to develop some basic factfinding related to his specific characteristics, and is given the opportunity to explain the totality of the facts surrounding the entirety of his criminal history. The district court is the best place to do basic factfinding of this nature. The district court is the right place to give a defendant the opportunity to make an individualized showing that he is not actually dangerous, and is the correct forum for defendants to present information focusing on their specific characteristics. *Williams*, 113 F.4th at 663. District courts are well positioned to consider the "totality of the facts" related to both a defendant's history of both felonies as well as misdemeanors. *See, e.g., Goins*, 118 F.4th at 805. District court judges are most capable of conducting an analysis of this nature within the constitutionally permissible scope of § 922 (g)(1), "much like the officials of old—[]focus[ing] on each individual's specific characteristics" and assigning probative value accordingly. *Williams* 113 F4th at 657; *See, e.g. United States v. Green*, Case No. 23-CR-20506, 2024 WL 4469090 at *7-8 (E.D. Mich. Oct 10, 2024) (citing Fed. R. Evid. 609 and acknowledging "convictions over 10 years old are sometimes recogniz[ed] as having

less probative value in regarding a person's current demeanor…the age of that conviction weighs against considering it heavily."); and *Jennings*, 754 F. Supp. 3d at 770 (noting that, while *Williams* gave no guidance on the weight courts should give to old convictions, "common sense…strongly suggests that they should be given less weight.").

For example, consider *Williams's* second category of offenses, crimes which do not always involve an immediate and direct threat of violence against a person. *Williams*, 113 F.4th at 659. "A prime example is drug trafficking." *Id*. (citing 18 U.S.C. § 924(c) and *Folajtar v. Att'y Gen.,* 980 F.3d 897, 922 (Bibas, J., dissenting). The government's citation to Mr. Hostettler's drug history seems to implicitly place these offenses in *Williams's* second category. But Mr. Hostettler has never had the opportunity to develop the record related to these offenses, and no court has engaged in factfinding sufficient to support any finding about these offenses.

What we do know from the bare criminal history only report is that most of Mr. Hostettler's drug related offenses are category three offenses. Possession of drug tools, paraphernalia, and even drug possession, standing alone, do not present a danger to the community. The government does point to a single, 20-year-old, conviction of possession for the purpose of sale, but in the absence of any factfinding by a district court, we are left only with the observations of the court below, who noted that this decades-old conviction is more probative to show that Mr. Hostettler

was a drug addict who sold small quantities of drugs to support his own habit than it is probative of him being a dangerous drug dealer ravaging the streets of San Bernardino.  (R. 15, *Opinion and Order*, PageID 105).

As to Mr. Hostettler's criminal history in the criminal history only report, the court below put it best:

> Overall, Mr. Hostettler has no record of felony violence.  His convictions for forgery and receiving stolen property are non-violent. His conviction in 2017 for aggravated possession of drugs did not, so far as the record shows, involve a firearm or any violence. …Accordingly for Mr. Hostettler, these offenses cannot serve as a proxy for dangerousness rising to the level of a felony to justify disarmament.

*Id*. at PageID 106 (citing *Range v. AG United States*, 69 F.4th 96 at 105-06, and *Kanter v. Barr*, 919 F.3d 437, 467-69 (7th Cir. 2019)(Barrett, J. dissenting). In the absence of basic factfinding by a district court about Mr. Hostettler's felony and misdemeanor convictions, we simply do not know what the totality of the facts are related to these offenses.  This Court is denied the opportunity to have a complete record of Mr. Hostettler's specific characteristics, and Mr. Hostettler is denied the opportunity to be heard—he is denied the chance to make an individualized showing before a district court judge before being dispossessed of his fundamental rights under the Second Amendment.  The Second Amendment's fundamental nature as a constitutional right available to all people regardless of status demands that any

22

restrictions be narrowly tailored only after a defendant has been provided an opportunity to be heard.

### 2. The government reads *Goins* as a complete bar to persons under supervision pursuant to the categorical exclusions found under § 922(g)(1). This is incorrect. *Goins* did not change *Williams'* right to be heard.

The government next points out that at the time of the dismissed indictment, Mr. Hostettler was under federal supervision. He was, they argue, therefore prohibited from possessing firearms. *Opening Brief for the United States*, Doc. 24 at 23 (citing *United States v. Goins*, 118 F.4th 794, 805 (Bush, J., concurring in part)(finding that Goins was on probation at the time he possessed the firearm "alone should be dispositive")). They suggest that "[l]ikewise, when Hostettler possessed the charged firearm in this case, he was on federal supervised release and was prohibited for [*sic*] possessing firearms." *Id*.

But *Goins*, coming as it did after *Williams*, did not change *Williams*. It did not create an independent category of defendants who, by their nature as being under supervision and without a *Williams* analysis, are automatically dispossessed of their constitutional right to keep and bear arms in self-defense. Instead, it created a presumption of dispossession which, according to *Williams*, is a presumption that the defendant should have the opportunity to rebut. *Williams* makes clear that "[t]he relevant principle from our tradition of firearms regulations is that, when the legislature disarms on a class-wide basis, individuals must have a reasonable

opportunity to prove that they don't fit the class-wide generalization." *Williams*, 113 F.4th at 661. Mr. Hostettler has not yet had that opportunity, even in relation to the fact he was under supervision. Mr. Hostettler may have been in violation of his supervision, but absent opportunity to be heard on the matter of dangerousness consistent with *Williams*, simply relying on the fact that he is under supervision is another attempt to create the very type of categorical dispossession that *Williams* rejected. *Williams*, 113 F.4th at 660.

Put another way, *Goins* does not stand for the proposition that simply being under supervision makes one dangerous. In fact, the majority opinion in *Goins* did the opposite, specifically finding that Mr. Goins was on supervision for a "dangerous crime" and that it was his "repeated actions [that] demonstrated a likelihood of future dangerous conduct." *Goins* at 797. The district court in *Goins* clearly engaged in a *Williams* dangerousness analysis and seemingly gave Mr. Goins the opportunity to be heard. This alone makes *Goins* distinguishable from Mr. Hostettler, who has not yet had that opportunity.

Furthermore, whereas *Goins* was under state supervision for a "dangerous crime," here the government would have this Court simply accept the bare assertion that Mr. Hostettler was under federal supervision as being enough to dispossess him of his Second Amendment right to keep and bear arms in self-defense. They would do so while denying Mr. Hostettler the very thing both *Williams* and the Fifth

Amendment to the U.S. Constitution demand—a meaningful opportunity to be heard and due process under the law. They would dispossess Mr. Hostettler of a fundamental constitutional right without granting him the opportunity to present any evidence or provide any information on the totality of the facts surrounding his previous convictions or his supervision, and to provide any specific characteristics relevant to the district court's review, or this Court's review, of the facts. This sets a dangerous precedent.

For example, take a defendant convicted of mail fraud who is serving a term of supervised release. Under this theory, *Goins* would dictate that a person convicted of a category three offense, one that this Court clearly identified in *Williams* as being non-dangerous, would be subject to dispossession of his Second Amendment Right to keep and bear arms in self-defense without being provided any opportunity to show he is not dangerous. This is exactly the kind of categorical dispossession *William* told courts <u>not</u> to do.

Mr. Hostettler concedes that he may be part of a class of persons that may be restricted as *Goins* suggests. But to be a constitutionally permissible restriction, *Williams* requires that Mr. Hostettler first be given the opportunity to show he is not dangerous. He was not given this opportunity. *Goins* did not change that.

**3. Because Mr. Hostettler was not granted the opportunity to be heard, this Court has an incomplete, one-sided record. This implicates Mr. Hostettler's Fifth Amendment Due Process rights. This court should remand to the court below to more fully develop the record and preserve Mr. Hostettler's constitutional right to due process.**

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that the deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306, 313 (1950). An "opportunity to be heard" is a fundamental requirement of due process. *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) (citing *Louisville & Nashville R.R. Co. v. Schmidt*, 177 U.S. 230 (1900)). This "opportunity to be heard" has been interpreted to mean an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

In their brief the government confesses that the district court committed error by placing the burden on the wrong party. *Opening Brief for the United States*, Doc. 24 at 24. By placing the burden on the wrong party, albeit unknowingly, the district court denied Mr. Hostettler what other defendants in this Circuit have had, an opportunity to be heard on a matter pertaining to a fundamental constitutional right, that to keep and bear arms in self-defense, granted at a meaningful time and in a meaningful manner. *Williams*, 113 F.4th at 661; *see also Young*, Case No. 6:24-CR-

025, 2025 WL 627207, at *10-11 (E.D. Ky. Feb 26, 2025); *Green*, Case No. 23-CR-20506, 2024 WL 4469090, at *7-8 (E.D. Mich. Oct 10, 2024); *Jennings*, 754 F. Supp. 3d at 769-770; *Banks*, 793 F. Supp. 3d at 901.

Moreover, in the absence of an opportunity to present evidence on dangerousness to the district court, this Court is left with an incomplete record. The district court is best suited to making factual findings of the nature required to complete the record. This Court should remand to the district court for factual findings, and to permit Mr. Hostettler the ability to be heard.

## III. Summary and Conclusion

Mr. Hostettler makes several important concessions. First, Mr. Hostettler concedes that the district court placed the burden on the wrong party when it considered his motion to dismiss the indictment. Second, he concedes that the district court erred by relying only on his felony convictions rather than the entirety of his criminal history, including misdemeanors. Third, he concedes that he may be among the group of persons *Goins* restricts. But these concessions are not enough to dispossess him of his fundamental rights under the Second Amendment to keep and bear arms in self-defense absent an opportunity to be heard in accordance with *Williams*. And the government's attempts to shoehorn Mr. Hostettler into a categorical exclusion by overreliance on a tautological, derivative indictment and a

criminal history only report only further exacerbates the fact that he has not been afforded the opportunity to be heard.

Mr. Hostettler should be afforded the same opportunity provided to other defendants in this Circuit, as *Williams* directs—to be heard on the issue of dangerousness. "[E]ntire groups [cannot] be presumptively disarmed," even felons. *Williams*, 113 F.4th at 656. "[H]istory shows that § 922(g)(1) might be susceptible to an as-applied challenge." *Id*. at 657. But for this to have meaning, Mr. Hostettler must have the opportunity to stand before a district court so that the district court can "determine[] whether [Mr. Hostettler] has met his burden to demonstrate that he is not dangerous." *Id*.

Mr. Hostettler has not had that opportunity. This Court should therefore remand to the district court to give Mr. Hostettler the opportunity to be heard at a meaningful time and place; to give Mr. Hostettler the opportunity to meet his burden and demonstrate he is not dangerous; and to preserve Mr. Hostettler's Fifth amendment right to due process.

Respectfully submitted,

/s/*Stephen C. Newman*
STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

/s/*Catherine Shusky*
CATHERINE SHUSKY
Attorney at Law

Ohio Bar: 0088731
Office of the Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
Phone: (216) 522-4856
Fax: (216) 522-4321
Email: stephen_newman@fd.org
Email: cathi_shusky@fd.org

Attorneys for Bo Bryant Hostettler

# CERTIFICATE OF SERVICE AND CONFORMITY

1.      I certify that on December 10, 2025, a copy of Appellee Bo Bryant Hostettler's Opening Brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

2.      This brief complies with the 13,000 type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as this brief contains 6,202 words in proportionally spaced font, Times New Roman, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Respectfully submitted,

/s/*Stephen C. Newman*
STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

# DESIGNATION OF DISTRICT COURT DOCUMENTS

Under Sixth Circuit Rules 28(b)(1)(A) and 30(g)(1), Appellee Bo Bryant

Hostettler designates the following relevant district court documents:

| Record Entry # | Description | Page ID# |
|---|---|---|
| 1 | Indictment | 1 – 2 |
| 6 | Pretrial Services Criminal History Only Report | 18 – 28 |
| 12 | Motion to Dismiss | 42 – 53 |
| 13 | Response In Opposition | 54 – 93 |
| 14 | Status Report | 94 – 95 |
| 15 | Opinion and Order | 96 – 110 |
| 19 | Sealed Motion to Stay Ruling | N/A |
| 21 | Response in Opposition | 135 – 137 |
| 22 | Notice of Appeal | 138 |